# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PAMELA MAXWELL,**
        **Plaintiff,**

    v.                                       **Case No. 14-C-1399**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

This case involves a challenge to the expert vocational testimony utilized by the Social Security Administration ("SSA") to identify jobs the applicant can do despite her impairments. See, e.g., Herrmann v. Colvin, 772 F.3d 1110, 1112-14 (7th Cir. 2014); Browning v. Colvin, 766 F.3d 702, 708-09 (7th Cir. 2014). Plaintiff Pamela Maxwell sought pre-hearing disclosure of the expert's sources and methods, but the Administrative Law Judge ("ALJ") denied her request. She now seeks judicial review of the ALJ's decision.

## I. BACKGROUND

Plaintiff applied for disability benefits claiming that she could not work due to a variety of impairments, including a shoulder injury, knee pain, and depression. (Tr. at 169.) After the SSA denied her application initially (Tr. at 111) and on reconsideration (Tr. at 118), plaintiff requested a hearing before an ALJ (Tr. at 122). The ALJ noticed a vocational expert ("VE") to appear and testify at the hearing (Tr. at 154), and plaintiff in turn requested a subpoena duces tecum requiring the VE to bring with her certain documents upon which she may rely in giving her testimony (Tr. at 276, 281). Plaintiff objected to the VE testifying about the number of jobs

that may exist in the labor market unless she produced valid, reliable data to support her testimony. Plaintiff further indicated that she did not believe the VE scheduled to appear had any qualifications as a labor market statistician that would qualify her to make extrapolations from the data sources described in the request; plaintiff thus objected to the VE's competency to offer such opinions. Plaintiff also attached to the request a summary of commonly cited statistical sources, identifying potential reliability problems associated with their use. (Tr. at 278, 282-85.) Plaintiff stated that she did not stipulate to the expertise of the scheduled expert to offer opinions in the case. She noted that, under Seventh Circuit precedent, a vocational opinion could constitute substantial evidence only if the expert used reliable methods and her underlying data and reasoning were available on demand. Plaintiff asked that, if the ALJ found the request over-broad or burdensome, he so advise in advance of the hearing so that she could consider amending her requests. (Tr. at 279.)

At the hearing, the ALJ denied plaintiff's request for a subpoena without discussion, noting that "your objection is clearly preserved in this record and that's the key I think for all of us." (Tr. at 40.) Before the VE testified, the ALJ asked plaintiff's counsel if he had any objection to the expert's qualifications, and counsel responded: "Just the limited objection I made in connection with my subpoena duces tecum." (Tr. at 78.) The ALJ replied: "And we certified that or documented that was overruled, but your objection is maintained." (Tr. at 78.)

The ALJ then asked the VE to identify jobs for a person like plaintiff (52 years old, limited education, no substantial work history) who was unable to lift and carry more than 10 pounds frequently, 20 pounds occasionally, unable to perform tasks requiring overhead lifting bilaterally, and unable to maintain the attention or concentration necessary to perform detailed or complex tasks. (Tr. at 78.) The VE testified that such a person could work as a cashier

2

(DOT # 211.462-010), with 15,340 positions in the state of Wisconsin; inspector (DOT # 529.687-114), with 3390 positions in Wisconsin; and marker (DOT # 209.587-034), with 2750 positions in Wisconsin. The VE confirmed that her answers had been consistent with the Dictionary of Occupational Titles ("DOT").[1] (Tr. at 81.)

On questioning from plaintiff's counsel, the VE indicated that the specific title of the cashier job was "cashier II" under the DOT, and that this job requires frequent handling and reaching. (Tr. at 82.) The DOT does not specifically address overhead reaching; it just refers to reaching. (Tr. at 83.) The marker job involves a person who affixes price tickets to articles of merchandise. (Tr. at 84.) Counsel did not question the VE about her data sources or methodology in coming up with specific numbers of jobs.

The ALJ issued an unfavorable decision. He determined that plaintiff's impairments limited her to light work, that would be unskilled in nature (not involving detailed or complex tasks), and would not require any overhead reaching. (Tr. at 20, 23.) Relying on the VE's testimony, the ALJ concluded that plaintiff could despite these limitations perform jobs existing in significant numbers in the national economy, including cashier II, inspector, and marker. (Tr. at 24-25.) The ALJ addressed plaintiff's challenge to the vocational testimony as follows:

> In a letter of March 21, 2013, the claimant's representative requested issuance of a subpoena duces tecum for the presentation of certain source documents used by the vocational expert; and he also objected to the methodology

---

[1]The DOT is a compendium of job descriptions published by the Department of Labor. Browning, 766 F.3d at 709. Under SSR 00-04p, 2000 SSR LEXIS 8, at *9, the ALJ must ask the VE if her testimony conflicts with information provided in the DOT and obtain a reasonable explanation for any apparent conflict.

3

employed by the vocational expert regarding her identification of jobs and determination of numbers of positions. However, the request for a subpoena was denied at the hearing, and the undersigned finds no merit in the objection to the vocational testimony.

The vocational testimony was adduced consistent with the provisions of 20 CFR 416.966(d)-(e), which allow for reference to a variety of statistical sources (which are not required to be produced), as well as to vocational expertise. The claimant's representative has not been qualified as a vocational expert himself; and thus has not presented any acceptable means of offering alternate jobs or numbers of positions, or of establishing a specific margin of error in a vocational expert's assessment (which in this instance accounted for the particular provisions in the residual functional capacity).

Furthermore, the undersigned finds that if the final totals for the jobs identified here by the vocational expert were in fact off by an exaggerated number (even hundreds), the actual remaining totals would still constitute significant numbers for the vocational analysis set forth above.

(Tr. at 25, internal record citations omitted.)

The Appeals Council denied plaintiff's request for review (Tr. at 1), making the ALJ's decision the final word from the Commissioner on plaintiff's application. See Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015). This action followed.

## II.  DISCUSSION

The ALJ's decision will stand if supported by "substantial evidence," which means such relevant evidence as a reasonable person could accept as adequate to support a conclusion. E.g., Curvin v. Colvin, 778 F.3d 645, 648 (7th Cir. 2015). The issue in this case is whether the VE's testimony provided a substantial evidentiary basis for the ALJ to conclude that plaintiff could perform jobs in the economy. See Overman v. Astrue, 546 F.3d 456, 464 (7th Cir. 2008) (noting that the Commissioner bears the burden of establishing that the claimant can perform other work that exists in significant numbers in the national economy). A VE's testimony can satisfy the Commissioner's burden only if that testimony is reliable. Id.; see also Britton v.

4

Astrue, 521 F.3d 799, 803 (7th Cir. 2008) ("A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated."). The Seventh Circuit has acknowledged that a VE is free to give a "bottom line," but the data and reasoning underlying that bottom line must be "available on demand" if the claimant challenges the reliability of the VE's opinions. McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004) (quoting Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002)).

Here, the ALJ rejected plaintiff's challenge, stating that the vocational testimony was adduced in accord with 20 C.F.R. § 416.966(d) and (e), which allow for reference to a variety of statistical sources that need not be produced, as well as vocational expertise. The cited regulations do not support the ALJ's conclusion.[2] Section 416.966(d) states that the agency will take administrative notice of reliable job information available from various governmental and other publications (e.g., the DOT, Census Reports, Occupational Analyses prepared for the SSA by state employment agencies). Section 416.966(e) indicates, "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist." Neither regulation states that a VE need not provide on request the data underlying her conclusions. Even if § 416.966(d) could be so read when a VE relies on one or more of the listed sources, the record does not disclose whether the VE used any of those sources in this case. And, even if the VE did use the listed sources, this does not necessarily mean that she used reliable methods in extracting specific numbers from those sources.

---

[2]Notably, the Commissioner makes no effort to defend the ALJ's decision based on the regulations.

5

The ALJ further stated that plaintiff's counsel is not a vocational expert himself, and that counsel provided no alternate method of calculating job numbers. But this ignores the fact that the burden on this issue falls on the Commissioner, not the claimant. See 20 C.F.R. § 404.1560(c)(2); McKinnie, 368 F.3d at 911. The ALJ made no effort to determine where the VE's numbers came from, whether the sources she used were reliable, or whether the VE had the expertise to extract job numbers from whatever data sources she used. Thus, the record does not enable the court to verify the job numbers the ALJ accepted. See Herrmann, 772 F.3d at 1114 ("We do not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted."). The ALJ concluded that, even if the VE's numbers were exaggerated by several hundred, the actual remaining totals would still constitute significant numbers. Speculation of this sort cannot constitute substantial evidence. See White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The Commissioner contends that plaintiff forfeited the argument by failing to cross-examine the VE about her data and methods during the hearing. See, e.g., Liskowitz v. Astrue, 559 F.3d 736, 739 (7th Cir. 2009) ("[S]he forfeited this argument by failing to object to the VE's testimony during the hearing"); Barrett v. Barnhart, 355 F.3d 1065, 1067 (7th Cir. 2003) ("[B]ecause Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."); Donahue, 279 F.3d at 447 ("Raising a discrepancy only after the hearing . . . is too late."). None of these cases holds that a pre-hearing written objection, confirmed on the record at the hearing, is insufficient to preserve the issue.

In Liskowitz, 559 F.3d at 744, the VE used a particular data source, and the claimant

argued on judicial review that the ALJ should not have credited the VE's testimony because the source was unreliable. The court found that the argument forfeited:

> The VE had the [data source] with her while she testified. Had Liskowitz actually objected to the VE's testimony, the VE could have said more about the kind of information the [source] contains. At the very least, the VE could have identified which of her conclusions were based on the [source]. As it stands, however, the VE's testimony was both unobjected to and uncontradicted. Thus, the ALJ was entitled to credit this testimony.

Id. (internal citations omitted). There is no indication that the claimant in Liskowitz raised the issue at any point at the administrative level, leaving the vocational testimony "unobjected to and uncontradicted." Here, plaintiff did object (as the ALJ confirmed at the hearing). Similarly, nothing in the Barrett decision suggests that the claimant questioned the VE's testimony in any away at the administrative level. The court spent little time on this issue, reversing because the ALJ failed to accurately describe the claimant's condition to the VE. 355 F.3d at 1067.

The primary issue in Donahue, the progenitor of the line of cases on which the Commissioner relies, was whether the VE's testimony conflicted with the DOT; the Seventh Circuit held that raising the conflict only after the hearing was too late. 279 F.3d at 446-47. Nothing in Donahue suggests that raising the issue before the hearing does not suffice. Moreover, the ALJ's decision in Donahue issued before SSR 00-04p went into effect, and the Seventh Circuit later clarified that SSR 00-04p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts, so failing to raise the issue at the administrative level does not forfeit the right to do so on judicial review. Overman, 546 F.3d at 463; see also Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006) (calling language to the contrary in Donahue dicta). The Overman court also noted that, because disability adjudication is a hybrid between the adversarial and inquisitorial models, a claimant's failure to specifically identify the

7

conflict does not necessarily excuse the ALJ from finding out whether the VE's conclusions are reliable. Id. at 465.

The Seventh Circuit's decision in Britton also supports a more flexible approach:

> We recognize that the lack of pretrial discovery in Social Security hearings can make the task of cross-examining a VE quite difficult. As we held in McKinnie, the data underlying a VE's testimony must be available on demand to facilitate cross-examination and testing of the VE's reliability. But we refuse to endorse a system that drags out every Social Security hearing to an interminable length. We encourage ALJs and the Social Security bar to cooperate in such a way that makes data underlying VE testimony available on demand without making every hearing impossibly long. Perhaps brief recesses should be provided so attorneys can examine the sources relied upon by VEs or perhaps, as we believe was offered in this case, the claimant's attorney should have access to copies of the pages of those sources on which the VE relied. And an attorney who wants to make an argument based on data unavailable at the hearing should have the opportunity to do so by supplementing the record after the hearing. (Britton's attorney was given that opportunity and did not take it.) We believe that our "available on demand" rule and these suggestions can be applied to achieve the proper balance between the needs of the claimant to effectively cross-examine the VE and the needs of the Commissioner to hold efficient hearings.

521 F.3d at 804. If a post-hearing challenge will suffice, a pre-hearing challenge should as well.[3]

Even if raising the issue at the hearing is essential, the matter was addressed on the record in this case, if briefly. During the hearing, the ALJ stated that plaintiff's "objection is clearly preserved in this record." (Tr. at 40.) Before the VE testified, counsel reiterated the objection he made in connection with the subpoena duces tecum request, and the ALJ again responded, "your objection is maintained." (Tr. at 78.)

To the extent that one could argue that these exchanges, viewed in isolation, preserved

---

[3] I note than even in judicial proceedings conducted under the more rigid rules of evidence, a party who raises an evidentiary issue via pre-trial motion need not, once the court rules against her, renew an objection or make an offer of proof to preserve a claim of error for appeal. E.g., Wipf v. Kowalski, 519 F.3d 380, 385 (7th Cir. 2008).

8

only plaintiff's challenges to the expert's qualifications or the denial of the subpoena (as opposed to plaintiff's challenge to the expert's data and methods), the ALJ's decision confirms that he did not have that understanding. In his decision, the ALJ noted that plaintiff requested the VE's source documents and "also objected to the methodology employed by the vocational expert regarding her identification of jobs and determination of numbers of positions." (Tr. at 25.) The ALJ then stated that the challenge failed because the regulations did not require production and the VE appropriately relied on her vocational expertise. See Overman, 546 F.3d at 464 (finding that the claimant had not forfeited her DOT conflict argument in part because the ALJ himself recognized the conflict in his decision, attempting to reconcile the VE's testimony with the Dictionary).

For all of these reasons, I find that plaintiff has not forfeited her challenge to the VE's testimony. Because the ALJ refused to require production of the VE's materials and failed to verify her conclusions, the matter must be remanded.[4]

Finally, plaintiff faults the ALJ for failing to follow up on the VE's admission that the DOT does not indicate whether the identified jobs require overhead reaching, something plaintiff cannot do. Plaintiff notes that the cashier and marker positions presumably involve overhead work. The Commissioner responds that, even if these two jobs are eliminated, that still leaves a substantial number of inspector jobs. Plaintiff wonders whether this position, which involves inspection of candy or chewing gum in containers or on a conveyor to ensure that it is formed, coated, cupped, wrapped, or packed according to plant standards, see

---

[4]The Commissioner also argues that plaintiff's requested subpoena duces tecum was unreasonable. However, the ALJ did not deny the request because it was over-broad (or ask that it be narrowed, as plaintiff's counsel suggested he might), and my review is limited to the reasons the ALJ provided. E.g., Hanson v. Colvin, 760 F.3d 759, 762 (7th Cir. 2014).

http://www.occupationalinfo.org/52/529687114.html, is one of the DOT's many obsolete occupations.  See Herrmann, 772 F.3d at 1113 (referring to the DOT as "an obsolete catalog of jobs," with most of the entries in it dating back to 1977).  The parties should address these issues on remand.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision.  The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of May, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge